**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

SWEETA RAHEM SULTAN,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

Case No. 3:25-CV-00535-CLB

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**

[ECF No. 11]

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Sweeta Rahem Sultan's ("Sultan") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the Court is Sultan's motion for reversal and remand. (ECF No. 11.) The Commissioner filed a responsive brief, (ECF No. 13), and Sultan filed a reply, (ECF No. 14). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 10), the Court denies Sultan's motion for remand. (ECF No. 11.)

I.      **STANDARDS OF REVIEW**

        A.      **Judicial Standard of Review**

        The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**B.    Standards Applicable to Disability Evaluation Process**

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis

proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In

addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual can do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.    CASE BACKGROUND

### A.    Procedural History

Sultan applied for disability insurance benefits ("DIB") on June 21, 2023, with an alleged disability onset date of February 8, 2023. (AR 25, 192, 196.) Sultan's application was denied initially on July 2, 2024, and upon reconsideration on April 4, 2024. (AR 188-203.) Sultan subsequently requested an administrative hearing and on October 22, 2024, Sultan and her attorney appeared at a telephonic hearing before an ALJ. (AR 164-86.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on October 25, 2024, finding that Sultan was not disabled because she could perform other work that exists in significant numbers in the national economy. (AR 25-34.) Sultan appealed the October 25, 2024 decision, and the Appeals Council denied review. (AR 1-4.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Sultan filed a complaint for judicial review on September 30, 2025. (*See* ECF No. 1.)

///

**B.    ALJ's Decision**

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 25-34.) Ultimately, the ALJ disagreed that Sultan has been disabled from February 8, 2023, the alleged onset date, through the date of his decision. (AR 37.) The ALJ held that, based on Sultan's RFC, age, education, and work experience, Sultan could perform other work that exists in significant numbers in the national economy. (AR 32-33.)

In making this determination, the ALJ started at step one. Here, the ALJ found Sultan had not engaged in substantial gainful activity since February 8, 2023, the alleged onset date. (AR 27.) At step two, the ALJ found Sultan had the following severe impairments: left rotator cuff arthroscopy and repair; right heel spurs; bilateral plantar fasciitis; bilateral Haglund deformity; bilateral Achilles tendinitis; and bilateral knee pain. (AR 28-29.) At step three, the ALJ found that through the date last insured, Sultan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 29.)

Next, the ALJ determined Sultan has the RFC to perform light work as defined by 20 CFR 404.1567(b) except:

> Lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours out of 8; sit for about 6 hours out of 8; frequent postural activities; no ladders, ropes, or scaffolds; frequent left reaching and handling; no left overhead reaching; avoid concentrated exposure to extreme temperatures; and humidity; avoid even moderate exposure to hazards..

(AR 29.)

The ALJ found Sultan's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Sultan's statements concerning the intensity, persistence, and limiting effects of those symptoms were inconsistent with the medical evidence and other evidence in the record. (AR 30.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and

factors weighing against Sultan's credibility. (AR 29-32.) The ALJ then determined that Sultan is not capable of performing past relevant work, as a store laborer, as actually or generally performed. (AR 32.)

Relying on the testimony of the VE, the ALJ determined that Sultan's age, education, work experience, and RFC would allow him to perform other occupations existing in significant numbers in the national economy, such as: inspector and hand packager, assembler of small products, and assembler of electronic accessories. (AR 33.) Accordingly, the ALJ held that Sultan had not been under a disability disabled from February 8, 2023, the alleged onset date, through the date of his decision, and denied Sultan's claim. (AR 33-34.)

**III.    ISSUE**

Sultan seeks judicial review of the Commissioner's final decision denying DIB under Title II of the Social Security Act. (ECF No. 11.) Sultan raises a single issue for the Court's review: Whether the ALJ provided clear and convincing reasons for rejecting Sultan's subjective symptom testimony. (*Id.* at 5-10.)

**IV.    DISCUSSION**

When determining a claimant's RFC, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. "[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see also Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018) (as amended); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged." (citing *Reddick*, 157 F.3d at 722)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Smith*, 14 F.4th at 1113 ("In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." (internal citations omitted)).

In weighing a claimant's credibility, the ALJ may consider their reputation for truthfulness; inconsistencies either in their testimony or between their testimony and their conduct; their daily activities; work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted); *see Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (as amended) (to assess credibility the ALJ "may consider, among other factors, 'ordinary techniques of credibility evaluation,' 'inadequately explained failure to seek treatment or to follow a prescribed course of treatment,' and 'the claimant's daily activities.' " (citation omitted)).

The ALJ's decision states that in formulating Sultan's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (AR 29.) The ALJ first described Sultan's subjective symptom testimony as follows:

> The claimant testified that she is 49 years-old and lives with her daughter and son. She is currently not working. She previously worked at Arrow Electronics as a warehouse associate and stopped working in February 2023 because she had a lot of pain in her shoulder. She had surgery in April 2023 but after the surgery, she still had pain. She cannot raise her arm and has pain in her shoulder and neck. She cannot raise her left arm above her head. She cannot sit too long because of her back pain. She can stand for 5 or 6 minutes until she has to sit down. She has a lot of pain coming from both feet. Per the claimant's Function Report, she reported problems with lifting, squatting, standing, reaching, walking, sitting, kneeling, and stair climbing [(AR 424)].

(AR 30.)

After summarizing Sultan's subjective symptom testimony, the ALJ explained that "[t]he medical record demonstrates lesser severity of functionally limiting symptoms than as alleged by the claimant." (AR 30.) The ALJ then discussed the medical evidence in the record for each of Sultan's impairments. (AR 30-31.) For Sultan's shoulder, the ALJ noted that after Sultan underwent surgery, she received physical therapy and reported that her lingering pain was improving and was permitted to return to all regular activities as pain tolerated. (AR 30 (citing AR 561, 976).) For Sultan's bilateral Achilles tendinitis and bilateral plantar fasciitis, the ALJ noted that she was evaluated and received treatment in the form of physical therapy as well as icing, stretching, inserts, and pain medications. (AR 30-31 (citing AR 548, 922, 929, 936; 961, 1101-2.)) Finally, the ALJ addressed Sultan's bilateral knee pain, noting imaging studies of both knees were normal and she received injections and physical therapy. (AR 31 (citing AR 535-36, 1115).)

After so doing, the ALJ included restrictions in Sultan's RFC to account for her reported residual pain and symptoms. (*Id.*) Regarding Sultan's shoulder, the ALJ included a restriction for "no frequent left reaching and handling; no left overhead reaching." (*Id.*) For Sultan's bilateral Achilles tendinitis, bilateral plantar fasciitis, and bilateral knee pain, the ALJ included a restriction for "less than light work, frequent postural activities and no ladders, ropes or scaffolds." (AR 31.)

9

Finally, the ALJ explained:

> Overall, with respect to the claimant's impairments, the medical record demonstrates conservative primary care treatment at without evidence of significant changes in objective medical findings or treatment recommendations [(AR 922, 961, 1101-2, 1115)]. Despite receiving routine treatments for her symptoms, particularly with respect to the shoulder, the medical record, as discussed above, shows that such treatments were primarily conservative in nature, often in the form of recommendations for physical therapy, in-home exercises, follow-up visits and continuation with or adjustments to medications. The record as a whole establishes that the claimant's impairments cause some limitations in the claimant's ability to perform basic, work-related activities; however, those limitations are accounted for in the residual functional capacity assessment set forth above, which is supported by objective medical findings.

(*Id.*)

In her motion for remand, Sultan argues the ALJ erred in discounting her subjective symptom testimony because: (1) the ALJ merely recited the medical evidence in support of Sultan's RFC, rather than providing specific, clear, and convincing reasons for rejecting her testimony; (2) the ALJ mischaracterized whether Sultan's conditions were improving; and (3) the ALJ improperly relied on evidence of conservative treatment to discount her subjective symptom testimony because the record does not support that more aggressive treatment was recommended or available. (ECF No. 11 at 5-10.)

**1.    Consistency with Medical Evidence**

Sultan first argues the ALJ erred because he merely recited the medical evidence in support of Sultan's RFC, rather than providing specific, clear, and convincing reasons for why the objective medical evidence discounts Sultan's testimony. (ECF No. 11 at 7.) An ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). This means an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (citations omitted).

However, the Ninth Circuit has repeatedly upheld ALJ decisions where the ALJ finds that "objective medical evidence in the record is *inconsistent* with the claimant's

subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis original) (citing *Chaudhry v. Astrue*, 688 F.3d 661, 672-73 (9th Cir. 2012) (affirming an ALJ's determination that interpreted and preferred objective medical evidence to subjective testimony); *Burch*, 400 F.3d at 681 (affirming an ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and a claimant's daily activities); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming an ALJ's decision discounting a claimant's testimony after "finding no objective medical evidence to support [claimant's] descriptions of her pain and limitations," and "that [claimant] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations)). An ALJ does not commit error by "relying on any *contradictions* between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony." *Id.* at n.1 (emphasis original).

As outlined above, the ALJ discussed Sultan's testimony regarding her physical limitations, including that Sultan has pain in her shoulder, neck, back, and both feet, cannot raise her left arm above her head, cannot sit for too long without pain, can stand for 5 or 6 minutes before sitting, and has problems with lifting, squatting, standing, reaching, walking, sitting, kneeling, and stair climbing. (AR 30.) The ALJ then discussed the medical evidence showing that Sultan's shoulder pain improved after surgery and that the treatment recommendations for her knees and feet were for physical therapy, knee injections, icing, stretching, inserts, and pain medications. (AR 30-31 (citing AR 535-36, 548, 561, 922, 929, 936, 961, 976, 1101-2, 1115).) The ALJ then explained "[o]verall, with respect to the claimant's impairments, the medical record demonstrates conservative primary care treatment at without evidence of significant changes in objective medical findings or treatment recommendations". (AR 301 (citing AR 922, 961, 1101-2, 1115).) Therefore, the ALJ provided clear and convincing reasons for discounting Sultan's

subjective symptom testimony by identifying specific testimony that was inconsistent with specific medical evidence. *Berry*, 622 F.3d at 1234 (citation omitted); *see Smith,* 14 F.4th at 1113. Although the medical evidence could be interpreted in a different manner, the Court "may not substitute our judgment for that of the [ALJ]." *Garrison*, 759 F.3d at 1010 (citing *Andrews,* 53 F.3d at 1039); *Orteza,* 50 F.3d at 749 ("if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.").

Additionally, as explained above, although the ALJ found "[t]he medical record demonstrates lesser severity of functionally limiting symptoms than as alleged by the claimant[,]" the ALJ did include restrictions in Sultan's RFC to account for her reported pain. The ALJ included restrictions of "no frequent left reaching and handling; no left overhead reaching" for Sultan's shoulder pain and "less than light work, frequent postural activities and no ladders, ropes or scaffolds" for her feet and knee pain. (AR 30-31.) Thus, it is clear the ALJ did not wholly reject Sultan's subjective symptom testimony but rather permissibly weighed the medical evidence as undercutting Sultan's testimony. *Smartt*, F.4th at 498. Further, as discussed below, the ALJ's credibility determination was also supported by evidence that Sultan only conservatively treated her impairments. *See Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628 (9th Cir. 2011) (finding "the ALJ pointed to clear, specific, and cogent reasons" for discounting the claimant's subjective complaints where the ALJ pointed to "inconsistencies between her complaints and medical evidence, her daily activities, and the success of conservative treatment."). Therefore, the Court finds that the ALJ did not err in finding that Sultan's subjective symptom testimony conflicted with the medical evidence in the record. *Id.*

### 2.    Conservative Treatment and Improvement

The Court will now address Sultan's final two arguments. Sultan argues the ALJ mischaracterized whether Sultan's conditions were improving and erred in relying on evidence of conservative treatment to discount her subjective symptom testimony because the record does not support that more aggressive treatment was recommended or available. (ECF No. 11 at 8-9.) Evidence of "conservative treatment" is sufficient to

discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). The type and degree of treatment a claimant seeks "is powerful evidence" regarding the extent of symptoms. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti*, 533 F.3d at 1039-1040. However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist," *Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010), or where the claimant has a good reason for not seeking more aggressive treatment. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007)).

Sultan argues the ALJ "cannot claim that [Sultan's] treatment was 'conservative' while also pointing to surgery as proof that symptoms improved." (ECF No. 14 at 5.) The Ninth Circuit examined a similar argument in *Smartt v. Kijakazi*, where the claimant argued that her cervical spine surgery was not conservative treatment. 53 F.4th at 500. In *Smartt*, the Ninth Circuit found that the ALJ's decision was supported by specific, clear, and convincing findings with substantial evidence in the record where the ALJ noted that after the claimant underwent surgery, she received conservative treatment, "including physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication." *Id.* The Ninth Circuit noted that "[a]s a result of these measures, the record shows both self-reported and objective improvement" and concluded that "[t]he ALJ did

not err in concluding that such ongoing conservative treatment and overall improvement are inconsistent with [the claimant's] testimony as to the severity of her impairments." *Id.*

In this case, the ALJ noted in his decision that medical record shows that after Sultan's surgery,[1] she received conservative treatment recommendations for "physical therapy, in-home exercises, follow-up visits and continuation with or adjustments to medications." (AR 31.) There is no evidence in the record showing that medical providers recommended more aggressive treatment options. Thus, as in *Smartt*, the record demonstrates both self-reported and objective improvement based on the conservative treatment recommendations. Furthermore, as explained above, the ALJ did not completely reject Sultan's subjective symptom testimony and included restrictions in Sultan's RFC based on her reported residual pain and symptoms. Finally, even where the medical evidence could support another interpretation, the Court "may not substitute our judgment for that of the [ALJ]." *Garrison*, 759 F.3d at 1010 (citing *Andrews,* 53 F.3d at 1039); *Orteza,* 50 F.3d at 749. Therefore, the ALJ did not err in concluding that ongoing conservative treatment and overall improvement were inconsistent with Sultan's testimony as to the severity of her impairments. *Smartt*, 53 F.4th at 500.

In conclusion, the Court finds that the ALJ's evaluation of Sultan's subjective symptom testimony is supported by substantial evidence in the record because the ALJ properly relied on specific reasons for discounting Sultan's allegations by pointing to inconsistencies between her complaints and medical evidence and her conservative treatment. *See Buckner-Larkin,* 450 F. App'x at 628; *Smartt*, 53 F.4th at 500.

**V.     CONCLUSION**

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error.

---

[1]     In his decision, the ALJ states that Sultan underwent shoulder surgery on April 4, 2024. (AR 30.) However, the medical records show that the surgery occurred one year earlier, on April 4, 2023. (AR 549.) Regardless, the decision itself makes clear that the ALJ understood the surgery to have taken place in 2023. (AR 30 ("At the end of 2023, the claimant was reporting be (sic) doing 'pretty good in the postoperative period'.").)

Accordingly, **IT IS THEREFORE ORDERED** that Sultan's motion to remand, (ECF No. 11), is **DENIED**, and the final decision of the Commissioner is **AFFIRMED**.

IT IS FURTHER ORDERED that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: April 3, 2026.

_____
**UNITED STATES MAGISTRATE JUDGE**